1

2

3

4

5                    UNITED STATES DISTRICT COURT

6                    EASTERN DISTRICT OF CALIFORNIA

7

8  PSC INDUSTRIAL OUTSOURCING,              CASE NO. 1:13-cv-0964
   LP, a Delaware limited partnership,
9                                           ORDER ON PLAINTIFF'S *EX PARTE*
            Plaintiff                       APPLICATION FOR TEMPORARY
10                                          RESTRAINING ORDER AND ORDER
            v.                              TO SHOW CAUSE RE: PRELIMINARY
11                                          INJUNCTION
   KENNETH KODYSZ, and Individual,
12                                          Doc. # 5
            Defendant.
13

14

15

16         In this action for damages and injunctive relief, plaintiff PSC Industrial Outsourcing, L.P.

17  ("Plaintiff") has filed an *ex parte* application to enjoin defendant Kenneth Kodysz ("Defendant")

18  from violation of confidentiality and non-competition agreements entered into by Defendant at the

19  beginning of his employment with Plaintiff's predecessor.  The underlying complaint alleges

20  diversity jurisdiction pursuant to 28 U.S.C. § 1332.  Venue is proper in this court.

21                          FACTUAL BACKGROUND

22         Plaintiff is an environmental and industrial services company that provides services such

23  as hydro-blasting, chemical cleaning, tank cleaning, dredging and other industrial cleaning

24  services on a contract basis to large businesses, including refineries.  Defendant was hired by

25  Plaintiff's predecessor, Allwaste Environmental Services/West Coast, Inc.("Allwaste") on or

26  about May 17, 1994.  Allwaste was acquired by Plaintiff in 1998.  Upon employment with

27  Allwaste, Defendant signed an employment agreement (the "Agreement") that included, *inter alia*,

28  a one-year non-compete and non-solicitation agreement, an agreement for return of company

1   property, including lists and memoranda, and a non-disclosure of trade secrets agreement.  See

2   Exh. "A" to Declaration of Josh M. McMorro, Doc # 5-4 at ¶¶ 3, 4 and 7.  Defendant resigned

3   from Plaintiff's employ on or about May 10, 2013, and immediately began employment with a

4   major competitor, Matrix Service Co., Inc. ("Matrix").

5            At the end of his employment with Plaintiff, Defendant attended an "exit interview" with

6   his supervisor where Defendant was asked to return all of Plaintiff's property "including all

7   documents and information that [Defendant] maintained on his cell phone, iPad and his laptops."

8   Doc. # 5-1 at 14:19-20.  A letter reminding Plaintiff of his obligation to return Plaintiff's property

9   and to abide by the non-compete and trade secret agreements was sent to Plaintiff on or about May

10   20, 2013.  Plaintiff alleges that, as of the date of Plaintiff's filing of the complaint and the instant

11   request, Defendant has not responded to demands for return of Plaintiff's property nor

12   acknowledged his obligations under the non-compete and trade secret agreements.

13            Plaintiff also alleges that immediately after his resignation from employment with

14   Plaintiff, Defendant "remotely accessed former PSC e-mail account without consent and

15   forwarded a chain of emails between him and a client [of Plaintiff's] to [Defendant's] Matrix

16   email account.  The chain of emails is alleged to contain, among other things, the client's contact

17   information, Plaintiff's pricing information and information regarding Plaintiff's "pending

18   contracted projects for other clients that may affect [Plaintiff's] ability to perform the project for

19   the relevant client."  Doc. #5-1 at 15:21-23.  Plaintiff asserts that Defendant's conduct is

20   consistent with an underlying effort by Matrix to recruit Plaintiff's employees and to

21   misappropriate Plaintiff's trade secrets in order to facilitate Matrix's transition from a company

22   that builds tanks into the business of servicing tanks in competition with Plaintiff.  Plaintiff alleges

23   that Defendant is the third of Plaintiff's employees to be "poached" by Matrix.

24            Plaintiff's seeks injunctive relief by way of a temporary restraining order ("TRO") to force

25   the return of over "27,000 files and folders and approximately 30 gigabytes of data currently in

26   Defendant's possession and enforcement of the non-compete and trade secret provisions of the

27   Agreement.  For the reasons that follow, that request will be granted in part and denied in part.

28

1

2                                    **LEGAL STANDARD**

3          Because Plaintiff seeks issuance of a TRO without notice to the Defendants, Plaintiff must

4    satisfy both the general standard for temporary restraining orders and the requirements for ex parte

5    orders set forth in Federal Rule of Civil Procedure 65(b).  The general standard for issuing a TRO

6    is identical to the standard for issuing a preliminary injunction.  Brown Jordan Int'l, Inc. v. Mind's

7    Eye Interiors, Inc., 236 F.Supp.2d 1152, 1154 (D.Haw.2002); Lockheed Missile & Space Co., Inc.

8    v. Hughes Aircraft Co., 887 F.Supp. 1320, 1323 (N.D.Cal.1995).  A plaintiff seeking a

9    preliminary injunction must make a four-fold showing: (1) that he is likely to succeed on the

10   merits; (2) that he is likely to suffer irreparable harm in the absence of preliminary relief; (3) that

11   the balance of equities tips in his favor; and (4) that an injunction is in the public interest.  Winter

12   v. Natural Res. Def. Council, Inc., 555 U.S. 7, 129 S.Ct. 365, 374, 172 L.Ed.2d 249 (2008); Amer.

13   Trucking Assocs., Inc. v. City of Los Angeles, 559 F.3d 1046, 1052 (9th Cir.2009).  Pursuant to

14   Rule 65(b), Federal Rules of Civil Procedure, a temporary restraining order may be granted

15   without notice to the adverse party only if: 1) it clearly appears from specific facts shown by

16   affidavit or verified complaint that immediate and irreparable injury, loss or damage will result

17   before the adverse party can be heard in opposition, and 2) the applicant's attorney certifies the

18   reasons that notice should not be required.  The purpose in issuing a temporary restraining order is

19   to preserve the status quo for a short time pending a fuller hearing.  The Ninth Circuit has

20   cautioned that there are very few circumstances justifying the issuance of an ex parte TRO.  Reno

21   Air Racing Assoc., Inc. v. McCord, 452 F.3d 1126, 1131 (9th Cir.2006).  Such circumstances

22   include "a very narrow band of cases in which ex parte orders are proper because notice to the

23   defendant would render fruitless the further prosecution of the action." Id. (quoting Amer. Can Co.

24   v. Mansukhani, 742 F.2d 314, 322 (7th Cir.1984)).

25                                      **ANALYSIS**

26          In the underlying suit, Plaintiff has alleged claims for breach of contract, violation of

27   California's Uniform Trade Secrets Act, Cal. Civ. Code § 3426 et seq. ("UTSA"), violation of

28   California's Unfair Competition statute and violation of California Penal Code section 502.

                                             3

1   Plaintiff alleges it will be irreparably harmed by divulgence of Plaintiff's confidential information

2   and trade secrets, the solicitation of Plaintiff's customers in violation of the non-compete

3   agreement and the solicitation or interference of Plaintiff's employees.

4   **I.      Likelihood of Success on the Merits**

5         California Business and Professions Code section 16600 codifies California's general policy

6   with regard to non-compete agreements in the context of employment contracts.  Except for two

7   statutory exceptions not relevant here, "every contract by which anyone is restrained from

8   engaging in a lawful profession, trade, or business of any kind is to that extent void."  Bus. & Prof.

9   Code § 16600.  Dowell v. Biosense Webster, Inc., 179 Cal.App.4th 564, 575 (2nd Dist. 2010).  A

10  good deal of California case authority is devoted to the tension that is acknowledged to exist

11  between section 16600 and the UTSA.  See e.g., Thompson v. Impaxx, Inc., 113 Cal.App.4th

12  1425, 1429-1430 (2nd Dist. 2003).  Although California courts have expressed skepticism that

13  there is a common law "trade secret exception" to section 16600, see Dowell, 179 Cal.App.4th at

14  577, there appears to be no doubt that employee conduct that is otherwise tortious under UTSA or

15  under unfair competition law may be enjoined.  "We distill from the foregoing cases that section

16  16600 bars a court from specifically enforcing (by way of injunctive relief) a *contractual* clause

17  purporting to ban a former employee from soliciting former customers to transfer their business

18  away from the former employer to the employee's new business, but a court may enjoin *tortious*

19  conduct (as violative of either the Uniform Trade Secrets Act (Civ. Code § 3426 et seq.) and/or the

20  unfair competition law) by banning the former employee from using trade secret information to

21  identify existing customers to facilitate the solicitation of such customers, or to otherwise unfairly

22  compete with the former employer."  The Retirement Group v. Galante, 176 Cal.App.4th 1226,

23  1233 (2009) (italics in original).

24        From the foregoing it is apparent that section 16600 constrains the breadth of equitable

25  remedies that are available to those that are necessary to protect trade secrets.  The sort of

26  injunctive relief that would be required to enforce Plaintiff's requested injunctions against, for

27  example, solicitation of former customers or current employees as broadly requested in paragraphs

28  (f) and (h) of Plaintiff's proposed Temporary Restraining Order is not available.  In addition, the

1   California appellate court's opinion in <u>Thompson</u> cautions that what is or is not a "trade secret" is

2   question of fact, not merely a matter of labeling.  113 Cal.App.4th at 1430.  Thus, while Defendant

3   may be obliged as a matter of *contract* to return all of the "27,000 files and folders and

4   approximately 30 gigabytes of data" claimed to be in Defendant's possession, the court cannot

5   presume on the information alleged that the court can exercise injunctive authority over the

6   entirety of that material because it is all "trade secret" or confidential information.

7         California's UTSA defines a trade secret as a "formula, pattern, compilation, program, device,

8   method, technique, or process, that: (1) Derives independent economic value, actual or potential,

9   from not being generally known to the public or to other persons who can obtain economic value

10  from its disclosure or use; and (2) Is the subject of efforts that are reasonable under the

11  circumstances to maintain its secrecy."  Cal. "Civ. Code § 3426.1(d); <u>Thompson</u>, 113 Cal.App.4th

12  at 1430.  Based on this definition, the court finds that, to the extent Plaintiff seeks to enjoin by

13  means of TRO Defendant's conduct with respect to the entirety of the data alleged to be in

14  Plaintiff's possession, the court presently lacks a legal basis for such broad regulation.  However,

15  where the categories of data are further specified such that they clearly come within the ambit of

16  the statutory definition of trade secret, the court may appropriately impose injunctive relief.

17        At paragraph (i) of Plaintiff's proposed TRO, Plaintiff requests that the court enjoin Defendant

18  from "disclosing and using [Plaintiff's] Confidential Information and Trade Secrets and to return

19  such documents, data and information to [Plaintiff] and to not retain any copies, summaries or

20  other partial or complete excerpts of such documents and information."  Doc. # 5-5 at 4:4-8.

21  Plaintiff defines "Confidential Information and Trade Secrets" in the following paragraph as: "key

22  contact information for [Plaintiff's] clients and potential clients, [Plaintiff's] pricing data and

23  formulas, knowledge of upcoming client projects six to twelve months before the project will

24  become available for bidding, information regarding contracts and pricing arrangements with

25  clients, analysis and bids to clients relating to potential new projects, and details of particular

26  contracts handled by [Plaintiff]."  <u>Id.</u> at 4:10-14.

27        Except for the first of the elements listed – "key contact information for [Plaintiff's] clients

28  and potential clients" -- the court finds that the list of data categories Plaintiff uses to define

5

1   confidential information and trade secrets come well within the scope of the statutory definition of

2   trade secrets set forth in the USTA.  While there is no doubt that customer lists *may* constitute

3   trade secret information, the determination is not determined simply by the fact that a company

4   has a list of actual or potential clients.  To the extent a potential customer lists embodies

5   information that is readily ascertainable, courts are reluctant to impose injunctive protection.

6   Morelife, Inc. v. Perry, 56 Cal.App.4th 1514, 1521-1522 (1997).  In a similar vein, some

7   California courts have declined to assert injunctive authority over a defendant's use of memory of

8   personal contacts from customer lists that might otherwise have been confidential.  Moss, Adams

9   & Co. v. Shilling ,179 Cal.App.3d 124, 129 ((1986).  The court feels that any attempt to curtail

10  Defendant's use of or reliance on Plaintiff's lists of actual or potential clients must be fairly

11  narrow to meet the standard of "likely to prevail on the merits."  With regard to the remainder of

12  the categories listed by Plaintiff and set forth above, the court finds that Plaintiff meets the "likely

13  to succeed on the merits" standard.

14  **II.       Irreparable Harm and Balance of Equities**

15          The court may grant a preliminary injunction when there is evidence of the threat of

16  committing an act in violation of the rights of another party respecting the subject of the action.

17  Dodge, Warren & Peters Ins. Services, Inc. v. Riley, 105 Cal.App.4th 1414, 1418 (2003).

18  Plaintiff has presented evidence of an on-going effort by Matrix to "poach" Plaintiff's employees

19  for the purpose of accelerating its entry into the business of environmental tank maintenance.  To

20  the extent Matrix accomplishes this by use of Plaintiff's bidding formulae, discount

21  considerations, confidential bids, or knowledge of pending projects, the rights of Plaintiff to the

22  continuing confidentiality of information it has expended time and capital to acquire is violated.

23  Given that Defendant was recruited by Matrix, and that other key employees were similarly

24  recruited by Matrix for the purpose of developing its new environmental services business, it is

25  fair to presume that the Confidential and Trade Secret Information in possession of Defendant

26  will be acquired and used by Matrix to Plaintiff's detriment and in violation of California's unfair

27  business practices statute.  The court therefore finds that, with respect to categories of data listed

28  above as fitting within the statutory definition of "Trade Secret," Plaintiff has adequately

6

1  demonstrated the likelihood of imminent harm in the absence of preliminary relief and that the

2  balance of equities tips in Plaintiff's favor.

3  **III.      Rule 65(b) Elements**

4      The court is informed that Defendant's counsel has received notice of this application and that

5  opposition can be expected in the next few days.  Strictly speaking, the matter is therefore not *ex*

6  *parte* and the additional requirements of Rule 65(b) do not apply.  However, it is the court's intent

7  to impose injunctive limitations on Defendant's conduct to the extent supported by the foregoing

8  analysis and necessary to prevent violation of Plaintiff's right to the continuing confidentiality of

9  information that clearly falls within the definition of Trade Secret.  The court does so with the

10  understanding that the order imposed herein may be modified by the court upon agreement of the

11  parties or upon good cause shown by either party and that the restrictions imposed hereby are

12  crafted to cause minimal disruption of either parties' lawful activities.

13                                          **ORDER**

14      THEREFORE, in consideration of the foregoing, it is hereby ORDERED that:

15      1.  Defendant shall not use or disclose any Trade Secret or Confidential Information

16          belonging to Plaintiff; including specifically any pricing data or formulas, information or

17          knowledge pertaining to upcoming client projects six to twelve months before the project

18          will become available for bidding, information regarding contracts and pricing

19          arrangements with clients, and details of particular contracts handled by Plaintiff.

20      2.  Defendant shall not use, copy or disseminate client contact information that was made

21          available to Defendant by Plaintiff .  Plaintiff shall not use, copy or disseminate potential

22          client contact information that was made available by Plaintiff to Defendant except to the

23          extent that such list of potential clients is readily available to the public or consists of a

24          class of potential clients whose identities may be readily discerned from public

25          information.

26      3.  Defendant shall not copy, disseminate or use any information obtained from Defendant's

27          email account at Plaintiff's place of business and shall promptly delete any such

28          transferred files, messages or other information except to the extent any transferred email

files or communications are personal to Defendant and do not represent Plaintiff's proprietary information.

4. Plaintiff shall serve this order on Defendant and shall serve a copy of this order on Defendant's employer.

5. Plaintiff shall file any reply to Defendant's opposition not later than fourteen (14) days from the date of filing of Defendant's opposition.

6. Upon filing of Plaintiff's reply, the parties shall meet and confer to schedule a hearing and shall contact the Deputy Clerk to schedule a hearing at the parties' earliest convenience.

IT IS SO ORDERED.

Dated:  __July 3, 2013__                    _____

                                   SENIOR  DISTRICT  JUDGE