# UNITED STATES DISTRICT COURT

# EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| PSC INDUSTRIAL OUTSOURCING, LP, a Delaware limited partnership,<br><br>Plaintiff<br><br>v.<br><br>KENNETH KODYSZ, and Individual,<br><br>Defendant. | CASE NO. 1:13-cv-0964<br><br>ORDER ON PLAINTIFF'S *EX PARTE* APPLICATION FOR TEMPORARY RESTRAINING ORDER AND ORDER TO SHOW CAUSE RE: PRELIMINARY INJUNCTION<br><br>Doc. # 5 |

In this action for damages and injunctive relief, plaintiff PSC Industrial Outsourcing, L.P. ("Plaintiff") has filed an *ex parte* application to enjoin defendant Kenneth Kodysz ("Defendant") from violation of confidentiality and non-competition agreements entered into by Defendant at the beginning of his employment with Plaintiff's predecessor. The underlying complaint alleges diversity jurisdiction pursuant to 28 U.S.C. § 1332. Venue is proper in this court.

## FACTUAL BACKGROUND

Plaintiff is an environmental and industrial services company that provides services such as hydro-blasting, chemical cleaning, tank cleaning, dredging and other industrial cleaning services on a contract basis to large businesses, including refineries. Defendant was hired by Plaintiff's predecessor, Allwaste Environmental Services/West Coast, Inc.("Allwaste") on or about May 17, 1994. Allwaste was acquired by Plaintiff in 1998. Upon employment with Allwaste, Defendant signed an employment agreement (the "Agreement") that included, *inter alia*, a one-year non-compete and non-solicitation agreement, an agreement for return of company

property, including lists and memoranda, and a non-disclosure of trade secrets agreement.  See Exh. "A" to Declaration of Josh M. McMorro, Doc # 5-4 at ¶¶ 3, 4 and 7.  Defendant resigned from Plaintiff's employ on or about May 10, 2013, and immediately began employment with a major competitor, Matrix Service Co., Inc. ("Matrix").

At the end of his employment with Plaintiff, Defendant attended an "exit interview" with his supervisor where Defendant was asked to return all of Plaintiff's property "including all documents and information that [Defendant] maintained on his cell phone, iPad and his laptops." Doc. # 5-1 at 14:19-20.  A letter reminding Plaintiff of his obligation to return Plaintiff's property and to abide by the non-compete and trade secret agreements was sent to Plaintiff on or about May 20, 2013.  Plaintiff alleges that, as of the date of Plaintiff's filing of the complaint and the instant request, Defendant has not responded to demands for return of Plaintiff's property nor acknowledged his obligations under the non-compete and trade secret agreements.

Plaintiff also alleges that immediately after his resignation from employment with Plaintiff, Defendant "remotely accessed former PSC e-mail account without consent and forwarded a chain of emails between him and a client [of Plaintiff's] to [Defendant's] Matrix email account.  The chain of emails is alleged to contain, among other things, the client's contact information, Plaintiff's pricing information and information regarding Plaintiff's "pending contracted projects for other clients that may affect [Plaintiff's] ability to perform the project for the relevant client." Doc. #5-1 at 15:21-23.  Plaintiff asserts that Defendant's conduct is consistent with an underlying effort by Matrix to recruit Plaintiff's employees and to misappropriate Plaintiff's trade secrets in order to facilitate Matrix's transition from a company that builds tanks into the business of servicing tanks in competition with Plaintiff.  Plaintiff alleges that Defendant is the third of Plaintiff's employees to be "poached" by Matrix.

Plaintiff's seeks injunctive relief by way of a temporary restraining order ("TRO") to force the return of over "27,000 files and folders and approximately 30 gigabytes of data currently in Defendant's possession and enforcement of the non-compete and trade secret provisions of the Agreement.  For the reasons that follow, that request will be granted in part and denied in part.

## LEGAL STANDARD

Because Plaintiff seeks issuance of a TRO without notice to the Defendants, Plaintiff must satisfy both the general standard for temporary restraining orders and the requirements for ex parte orders set forth in Federal Rule of Civil Procedure 65(b). The general standard for issuing a TRO is identical to the standard for issuing a preliminary injunction. Brown Jordan Int'l, Inc. v. Mind's Eye Interiors, Inc., 236 F.Supp.2d 1152, 1154 (D.Haw.2002); Lockheed Missile & Space Co., Inc. v. Hughes Aircraft Co., 887 F.Supp. 1320, 1323 (N.D.Cal.1995). A plaintiff seeking a preliminary injunction must make a four-fold showing: (1) that he is likely to succeed on the merits; (2) that he is likely to suffer irreparable harm in the absence of preliminary relief; (3) that the balance of equities tips in his favor; and (4) that an injunction is in the public interest. Winter v. Natural Res. Def. Council, Inc., 555 U.S. 7, 129 S.Ct. 365, 374, 172 L.Ed.2d 249 (2008); Amer. Trucking Assocs., Inc. v. City of Los Angeles, 559 F.3d 1046, 1052 (9th Cir.2009). Pursuant to Rule 65(b), Federal Rules of Civil Procedure, a temporary restraining order may be granted without notice to the adverse party only if: 1) it clearly appears from specific facts shown by affidavit or verified complaint that immediate and irreparable injury, loss or damage will result before the adverse party can be heard in opposition, and 2) the applicant's attorney certifies the reasons that notice should not be required. The purpose in issuing a temporary restraining order is to preserve the status quo for a short time pending a fuller hearing. The Ninth Circuit has cautioned that there are very few circumstances justifying the issuance of an ex parte TRO. Reno Air Racing Assoc., Inc. v. McCord, 452 F.3d 1126, 1131 (9th Cir.2006). Such circumstances include "a very narrow band of cases in which ex parte orders are proper because notice to the defendant would render fruitless the further prosecution of the action." Id. (quoting Amer. Can Co. v. Mansukhani, 742 F.2d 314, 322 (7th Cir.1984)).

## ANALYSIS

In the underlying suit, Plaintiff has alleged claims for breach of contract, violation of California's Uniform Trade Secrets Act, Cal. Civ. Code § 3426 et seq. ("UTSA"), violation of California's Unfair Competition statute and violation of California Penal Code section 502.

Plaintiff alleges it will be irreparably harmed by divulgence of Plaintiff's confidential information and trade secrets, the solicitation of Plaintiff's customers in violation of the non-compete agreement and the solicitation or interference of Plaintiff's employees.

**I.     Likelihood of Success on the Merits**

California Business and Professions Code section 16600 codifies California's general policy with regard to non-compete agreements in the context of employment contracts.  Except for two statutory exceptions not relevant here, "every contract by which anyone is restrained from engaging in a lawful profession, trade, or business of any kind is to that extent void."  Bus. & Prof. Code § 16600.  Dowell v. Biosense Webster, Inc., 179 Cal.App.4th 564, 575 (2nd Dist. 2010).  A good deal of California case authority is devoted to the tension that is acknowledged to exist between section 16600 and the UTSA.  See e.g., Thompson v. Impaxx, Inc., 113 Cal.App.4th 1425, 1429-1430 (2nd Dist. 2003).  Although California courts have expressed skepticism that there is a common law "trade secret exception" to section 16600, see Dowell, 179 Cal.App.4th at 577, there appears to be no doubt that employee conduct that is otherwise tortious under UTSA or under unfair competition law may be enjoined.  "We distill from the foregoing cases that section 16600 bars a court from specifically enforcing (by way of injunctive relief) a *contractual* clause purporting to ban a former employee from soliciting former customers to transfer their business away from the former employer to the employee's new business, but a court may enjoin *tortious* conduct (as violative of either the Uniform Trade Secrets Act (Civ. Code § 3426 et seq.) and/or the unfair competition law) by banning the former employee from using trade secret information to identify existing customers to facilitate the solicitation of such customers, or to otherwise unfairly compete with the former employer."  The Retirement Group v. Galante, 176 Cal.App.4th 1226, 1233 (2009) (italics in original).

From the foregoing it is apparent that section 16600 constrains the breadth of equitable remedies that are available to those that are necessary to protect trade secrets.  The sort of injunctive relief that would be required to enforce Plaintiff's requested injunctions against, for example, solicitation of former customers or current employees as broadly requested in paragraphs (f) and (h) of Plaintiff's proposed Temporary Restraining Order is not available.  In addition, the

California appellate court's opinion in Thompson cautions that what is or is not a "trade secret" is question of fact, not merely a matter of labeling. 113 Cal.App.4th at 1430. Thus, while Defendant may be obliged as a matter of *contract* to return all of the "27,000 files and folders and approximately 30 gigabytes of data" claimed to be in Defendant's possession, the court cannot presume on the information alleged that the court can exercise injunctive authority over the entirety of that material because it is all "trade secret" or confidential information.

California's UTSA defines a trade secret as a "formula, pattern, compilation, program, device, method, technique, or process, that: (1) Derives independent economic value, actual or potential, from not being generally known to the public or to other persons who can obtain economic value from its disclosure or use; and (2) Is the subject of efforts that are reasonable under the circumstances to maintain its secrecy." Cal. "Civ. Code § 3426.1(d); Thompson, 113 Cal.App.4th at 1430. Based on this definition, the court finds that, to the extent Plaintiff seeks to enjoin by means of TRO Defendant's conduct with respect to the entirety of the data alleged to be in Plaintiff's possession, the court presently lacks a legal basis for such broad regulation. However, where the categories of data are further specified such that they clearly come within the ambit of the statutory definition of trade secret, the court may appropriately impose injunctive relief.

At paragraph (i) of Plaintiff's proposed TRO, Plaintiff requests that the court enjoin Defendant from "disclosing and using [Plaintiff's] Confidential Information and Trade Secrets and to return such documents, data and information to [Plaintiff] and to not retain any copies, summaries or other partial or complete excerpts of such documents and information." Doc. # 5-5 at 4:4-8. Plaintiff defines "Confidential Information and Trade Secrets" in the following paragraph as: "key contact information for [Plaintiff's] clients and potential clients, [Plaintiff's] pricing data and formulas, knowledge of upcoming client projects six to twelve months before the project will become available for bidding, information regarding contracts and pricing arrangements with clients, analysis and bids to clients relating to potential new projects, and details of particular contracts handled by [Plaintiff]." Id. at 4:10-14.

Except for the first of the elements listed – "key contact information for [Plaintiff's] clients and potential clients" -- the court finds that the list of data categories Plaintiff uses to define

5

confidential information and trade secrets come well within the scope of the statutory definition of trade secrets set forth in the USTA.  While there is no doubt that customer lists *may* constitute trade secret information, the determination is not determined simply by the fact that a company has a list of actual or potential clients.  To the extent a potential customer lists embodies information that is readily ascertainable, courts are reluctant to impose injunctive protection. Morelife, Inc. v. Perry, 56 Cal.App.4th 1514, 1521-1522 (1997).  In a similar vein, some California courts have declined to assert injunctive authority over a defendant's use of memory of personal contacts from customer lists that might otherwise have been confidential.  Moss, Adams & Co. v. Shilling, 179 Cal.App.3d 124, 129 ((1986).  The court feels that any attempt to curtail Defendant's use of or reliance on Plaintiff's lists of actual or potential clients must be fairly narrow to meet the standard of "likely to prevail on the merits."  With regard to the remainder of the categories listed by Plaintiff and set forth above, the court finds that Plaintiff meets the "likely to succeed on the merits" standard.

**II.     Irreparable Harm and Balance of Equities**

The court may grant a preliminary injunction when there is evidence of the threat of committing an act in violation of the rights of another party respecting the subject of the action. Dodge, Warren & Peters Ins. Services, Inc. v. Riley, 105 Cal.App.4th 1414, 1418 (2003). Plaintiff has presented evidence of an on-going effort by Matrix to "poach" Plaintiff's employees for the purpose of accelerating its entry into the business of environmental tank maintenance.  To the extent Matrix accomplishes this by use of Plaintiff's bidding formulae, discount considerations, confidential bids, or knowledge of pending projects, the rights of Plaintiff to the continuing confidentiality of information it has expended time and capital to acquire is violated. Given that Defendant was recruited by Matrix, and that other key employees were similarly recruited by Matrix for the purpose of developing its new environmental services business, it is fair to presume that the Confidential and Trade Secret Information in possession of Defendant will be acquired and used by Matrix to Plaintiff's detriment and in violation of California's unfair business practices statute.  The court therefore finds that, with respect to categories of data listed above as fitting within the statutory definition of "Trade Secret," Plaintiff has adequately

1 demonstrated the likelihood of imminent harm in the absence of preliminary relief and that the
2 balance of equities tips in Plaintiff's favor.

**III.     Rule 65(b) Elements**

The court is informed that Defendant's counsel has received notice of this application and that opposition can be expected in the next few days. Strictly speaking, the matter is therefore not *ex parte* and the additional requirements of Rule 65(b) do not apply. However, it is the court's intent to impose injunctive limitations on Defendant's conduct to the extent supported by the foregoing analysis and necessary to prevent violation of Plaintiff's right to the continuing confidentiality of information that clearly falls within the definition of Trade Secret. The court does so with the understanding that the order imposed herein may be modified by the court upon agreement of the parties or upon good cause shown by either party and that the restrictions imposed hereby are crafted to cause minimal disruption of either parties' lawful activities.

**ORDER**

THEREFORE, in consideration of the foregoing, it is hereby ORDERED that:

1. Defendant shall not use or disclose any Trade Secret or Confidential Information belonging to Plaintiff; including specifically any pricing data or formulas, information or knowledge pertaining to upcoming client projects six to twelve months before the project will become available for bidding, information regarding contracts and pricing arrangements with clients, and details of particular contracts handled by Plaintiff.

2. Defendant shall not use, copy or disseminate client contact information that was made available to Defendant by Plaintiff . Plaintiff shall not use, copy or disseminate potential client contact information that was made available by Plaintiff to Defendant except to the extent that such list of potential clients is readily available to the public or consists of a class of potential clients whose identities may be readily discerned from public information.

3. Defendant shall not copy, disseminate or use any information obtained from Defendant's email account at Plaintiff's place of business and shall promptly delete any such transferred files, messages or other information except to the extent any transferred email

7

1  files or communications are personal to Defendant and do not represent Plaintiff's proprietary information.

4. Plaintiff shall serve this order on Defendant and shall serve a copy of this order on Defendant's employer.
5. Plaintiff shall file any reply to Defendant's opposition not later than fourteen (14) days from the date of filing of Defendant's opposition.
6. Upon filing of Plaintiff's reply, the parties shall meet and confer to schedule a hearing and shall contact the Deputy Clerk to schedule a hearing at the parties' earliest convenience.

IT IS SO ORDERED.

Dated:   July 3, 2013                              _____
                                                   SENIOR DISTRICT JUDGE